NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NEWTON BOSWELL,<br><br>*Plaintiff*,<br><br>v.<br><br>CABLE SERVICES COMPANY, INC., KAREN FISCHER, JOSEPH CASCHERA, PAULETTE HENSLER, JOHN DOES 1-10, JANE DOES 1-10 (said names being fictitious and unknown), ABC COMPANY 1-10 (said names being fictitious and unknown),<br><br>*Defendants*. | Civil Action No. 16-4498<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

I.  **INTRODUCTION**

This matter comes before the Court on the above-captioned Defendants' motion to dismiss for lack of personal jurisdiction, to transfer due to improper venue, and to dismiss Plaintiff's claim under the New Jersey Law Against Discrimination ("LAD") for failure to state a claim. D.E. 4. The Court reviewed all submissions made in support and opposition, and considered the motion without oral argument pursuant to L. Civ. R. 78.1(b). For the reasons that follow, Defendants' motion to dismiss for lack of personal jurisdiction is granted. As a result, the Court does not reach the motion to dismiss for improper venue or for failure to state a claim.

## II. FACTS[1] AND PROCEDURAL HISTORY

Defendant Cable Services Company, Inc. ("Cable Services" or "Defendant") is incorporated in Pennsylvania and has its principal place of business in Pennsylvania. D.E. 4-7 ("Fischer Cert.") ¶ 7; D.E. 4-4. Defendant Karen Fischer has always worked in Cable Services' office in Williamsport, Pennsylvania and, at all relevant times, been a Pennsylvania resident. D.E. 9-1 ("Fischer Supp. Cert.") ¶¶ 4-5. Defendants Joseph Caschera and Paulette Hensler no longer work for Cable Services, but at all relevant times, worked out of Cable Services' Williamsport, Pennsylvania office and were Pennsylvania residents.[2] Fischer Cert. ¶¶ 10, 12; Fischer Supp. Cert. ¶¶ 7-12. Plaintiff is a New Jersey resident. D.E. 5 at 5.

On December 7, 2009, Defendant Cable Services Company, Inc. ("Cable Services" or "Defendant") hired Plaintiff Newton Boswell to work as a "lineman." Compl. at 2. Cable Services is a full service provider of telecommunications that specializes in broadband infrastructure design and installation in the United States. Fischer Cert. ¶ 6. Plaintiff's duties as a lineman consisted of "installing lock boxes, frame poles strand and cables at job sites throughout the Pennsylvania and New York area." *Id.* ¶ 16. In 2010, Plaintiff's earnings were exclusively from jobs he performed in Pennsylvania. *Id.* at ¶ 18. In 2011, the majority of Plaintiff's job assignments were in New York, but some were in Pennsylvania. *Id.* ¶ 19. Thus, although Plaintiff lived in New Jersey, his work for Cable Services occurred in Pennsylvania and New York.

---

[1] The facts of this matter derive from the Complaint and the affidavits submitted in support and opposition to this motion. As this is a motion to dismiss for lack of personal jurisdiction, the Court looks to facts beyond those alleged in the Complaint. *See Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996).

[2] Defendants' public record search indicates that Caschera and Hensler still reside in Pennsylvania. Fischer Supp. Cert. ¶ 9, 12. Plaintiff has presented no evidence to the contrary.

2

On July 6, 2011, Plaintiff injured his right knee while working at a project in New York. Compl. at 2. After two knee surgeries, Plaintiff returned to work on August 2, 2011 with modified duties. *Id.* On August 17, 2011, Plaintiff suffered a "serious" hand injury at work causing him to undergo two additional surgeries. *Id.*[3] The hand injury also occurred in New York.

On March 27, 2012, Plaintiff was examined by "the insurance company's"[4] independent medical examiner ("IME"). *Id.* at 3. On April 9, Plaintiff received the IME report, which concluded that Plaintiff was restricted to lifting no more than twenty pounds with his right hand. *Id.* at 4. On April 18, 2012, Plaintiff informed Cable Service's human resources manager that Plaintiff had been released back to work with restricted lifting duties for his right hand. *Id.*; Fischer Supp. Cert. ¶ 29.

Plaintiff alleges that Cable Services maintained a location in Sparta, New Jersey where he could have been assigned the light duty position known as a "flagger." Compl. at 9. In the Complaint, Plaintiff does not state that he ever applied for the flagger position (or any other position in Sparta) or that such a position was available. In a certification submitted in opposition to Defendants' motion, Plaintiff claims that in March 2012, he asked Defendant Karen Fischer, Cable Services' human resources manager, for the flagger position in Sparta but that she denied his request "because [he] had been laid off and not returned to [his] job [for] over one year." D.E. 5-2 ("Boswell Cert.") ¶ 4; D.E. 10-1 ("Boswell Supp. Cert.") ¶ I. Plaintiff also states that he was denied the position because Cable Services "already had flaggers" and Plaintiff was not certified as a flagger. Boswell Supp. Cert. ¶ I. According to Defendants, "Cable Services never advertised

---

[3] Plaintiff also refers to contracting Hepatitis B from a co-worker, *id.* at 3, but the Complaint is vague as to how this condition is relevant to Plaintiff's claims. The Complaint is not clear as to whether this condition is supposed to be a basis for Plaintiff's claims.

[4] It is not entirely clear from the Complaint who "the insurance company" is.

3

for, nor hired any candidates for a [f]lagger or other light duty position at [the Sparta] location." Fischer Supp. Cert. ¶ 17. During the relevant timeframe, Cable Services placed advertisements for only three positions in Sparta, all of which were not "light duty" and required qualifications that Plaintiff did not possess. Id. ¶¶ 19-20. Ultimately, Cable Services did not assign Plaintiff to another position and their employer-employee relationship ended.[5]

Plaintiff filed a Complaint alleging the following eight causes of action: (1) "Gross negligence and/or negligence in the hiring, training, retaining, supervision, and retention of the Defendant[s] Karen Fis[c]her, Joseph L. Caschera, [and] Paulette Hensler," (2) "Conspiracy to commit acts and violate Plaintiffs' [sic] rights," (3) "Fraudulent concealment/misrepresentation," (4) "Intentional and/or negligent breach of fiduciary duty," (5) "Breach of statutory duty," (6) "Claim for violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1, et seq., 42 USCA 1981, 1983, 1985, 1986, 1988[,] ADA, Title VII," (7) "Request for punitive damages," and (8) "Breach of implied covenant[] of good faith and fair dealing, intentional interference with beneficial economic expectations." Compl. at 13-25. Defendants filed a motion to dismiss for lack of personal jurisdiction, to transfer due to improper venue, and to dismiss Plaintiff's claim under the LAD for failure to state a claim.[6] Plaintiff filed an opposition and Defendants replied. Plaintiff then filed a sur-reply.[7]

### III. LAW AND ANALYSIS

---

[5] The exact date that Plaintiff officially stopped working for Cable Services is not clear. *See, e.g.*, Compl. at 18.

[6] Defendants' brief and supporting papers in support of their motion to dismiss (D.E. 4) will be referred to as "Def. Br." Plaintiff's submissions in opposition (D.E. 5) will be called "Pl. Opp." Defendants' reply papers (D.E. 9) will be referred to as "Def. Rep." Plaintiff's sur-reply (D.E. 10) will be known as "Pl. Sur-Rep."

[7] Plaintiff filed the sur-reply without leave of the Court. However, the Court subsequently granted Plaintiff leave to do so. D.E. 15.

4

### A. Standard of Review

In a motion to dismiss for lack of personal jurisdiction, the plaintiff "bears the burden of demonstrating the facts that establish" jurisdiction. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Initially, a court "take[s] the allegations of the complaint as true." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). However, once a defendant raises a jurisdictional defense, "a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Id.*; *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Yet, in reviewing the evidence, a court must "accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992); *see also Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) ("[I]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed factors in favor of the plaintiff") (internal quotation marks omitted). Therefore, in determining whether personal jurisdiction exists, the Court looks beyond the pleadings to all relevant evidence and construes all disputed facts in favor of the plaintiff.

### B. Personal Jurisdiction

"[A] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Provident Nat'l Bank v. Cal. Federal Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir.1987)). In New Jersey, "courts may exercise jurisdiction over a non-resident defendant to the uttermost limits permitted by the United States Constitution." *Nicastro v. McIntyre Mach. Am., Ltd.*, 201 N.J. 48, 72 (2010) (internal quotation marks omitted), *rev'd on other grounds sub nom.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "Accordingly,

in determining whether personal jurisdiction exists, we ask whether, under the Due Process Clause, the defendant has certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (internal quotation marks omitted).

Personal jurisdiction may be established by means of general jurisdiction or specific jurisdiction over a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (noting that "opinions in the wake of the pathmarking *International Shoe* decision have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction"). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Id.* (internal quotation marks omitted). A corporation's principal place of business is where the corporation's "affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." *Id.* at 761 (internal quotation marks omitted). Once general jurisdiction is established, a defendant can be sued in that jurisdiction on any matter. This is why general jurisdiction is referred to as "all-purpose" jurisdiction.

Specific jurisdiction requires that the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotation marks omitted). A court's exercise of personal jurisdiction "requires some act by which the defendant *purposefully avails* itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) (emphasis added) (internal quotation marks omitted).

6

Additionally, due process requires that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)); *see also O'Connor*, 496 F.3d at 316 (discussing three-step process in determining personal jurisdiction). Importantly, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A] plaintiff's residence, by itself, is insufficient to establish personal jurisdiction" over a defendant. *Choi v. Damul Corp.*, No. 12-2440, 2014 WL 314669, at *7 (D.N.J. Jan. 27, 2014). Once specific jurisdiction is established, a defendant can be sued in the jurisdiction only in the matter from which the jurisdiction arises. This is why specific jurisdiction is referred to as "case-linked" jurisdiction.

In this case, Plaintiff argues that the Court has both general and specific personal jurisdiction over Defendants. Pl. Opp. at 5, 8-10. As to the individual Defendants, Plaintiff makes no showing that any are domiciled in New Jersey, so the Court does not have general jurisdiction over them. As a result, the Court does not have general jurisdiction over the individual Defendants.

As to Cable Services, it is a Pennsylvania corporation whose principal place of business is also in that state. Thus, pursuant to the Supreme Court of the United States' analysis in *Daimler*, it does not appear that the Court has general jurisdiction over Cable Services either. *See Daimler AG*, 134 S. Ct. at 760. Nevertheless, Plaintiff contends that the Court has general personal jurisdiction over Defendants by virtue of Cable Services having registered to do business in New Jersey. Unfortunately, Plaintiff provides no legal authority to support his argument. Through its own research, the Court has determined that despite a split of authority in the District of New

Jersey, the mere fact that Cable Services is registered to do business in New Jersey and appointed an agent to receive process does not mean that it is subject to general jurisdiction in New Jersey.

In *Otsuka Pharm. Co. v. Mylan Inc.*, Chief Judge Simandle addressed the issue of whether a corporation's registration to do business and appointment of a registered agent for service of process in New Jersey means that the corporation consented to personal jurisdiction in New Jersey. 106 F. Supp. 3d 456, 467 (D.N.J. 2015). In relying on two Supreme Court cases from the first half of the twentieth century, Chief Judge Simandle concluded that "a corporation's appointment of an agent for service of process constitutes, under certain circumstances, consent to the forum's personal jurisdiction." *Id.* (citing *Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939); *Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 95 (1917)). The court reasoned that "in appointing an agent, a foreign corporation 'takes the risk of the construction that will be put upon the [registration] statute and the scope of the agency by the State Court.'" *Id.* at 468 (quoting *Robert Mitchell Furniture Co. v. Selden Breck Const. Co.*, 257 U.S. 213, 216 (1921)).

Additionally, Chief Judge Simandle relied on a decision from the Third Circuit, *Bane v. Netlink, Inc.*, where the Court found that "by registering to do business in Pennsylvania, the defendant purposefully availed itself of the privilege of conducting activities within the forum State, th[u]s invoking the benefits and protections of its laws." *Otsuka Pharm.*, 106 F. 3d at 468 (quoting *Bane v. Netlink, Inc.*, 925 F.2d 637, 640 (3d Cir. 1991)). Finally, the *Otsuka Pharmacy* court concluded that the Supreme Court's decision in *Daimler* did not preclude jurisdiction through a corporation's consent by means of registration and appointment of an agent for service of process. *Id.* In Chief Judge Simandle's view, *Daimler* concerned non-consensual general jurisdiction over a corporation but did not "cast any doubt on the continued vitality of consent-

based jurisdiction." *Id.* Therefore, the court in *Otsuka Pharmacy* concluded that two of the defendant corporations consented to jurisdiction in New Jersey by means of registering to do business and appointing a registered agent. *Id.* at 470. *See also Senju Pharm. Co. v. Metrics, Inc.*, 96 F. Supp. 3d 428, 438 (D.N.J. 2015) (noting that "acceptance of service by a defendant registered to do business in the state establishes personal jurisdiction"); *Sadler v. Hallsmith SYSCO Food Servs.*, No. 08-4423, 2009 WL 1096309, at *2 (D.N.J. Apr. 21, 2009) ("Because the Court finds that [the defendant corporation] consented to being sued in the courts of New Jersey, the Court need not engage in an analysis of [the defendant corporation's] contacts with the state.").

In another decision from this District, Judge Arleo reached the opposite conclusion. In *Display Works, LLC v. Bartley*, the court found that a corporation did not consent to jurisdiction in New Jersey merely by registering to do business here and appointing an agent for service of process. 182 F. Supp. 3d 166, 179 (D.N.J. 2016). The court relied on two primary premises to support its conclusion.

First, Judge Arleo distinguished the Third Circuit's decision in *Bane*. Judge Arleo explained that in *Bane*, the Third Circuit was interpreting Pennsylvania's registration statute, which provided that by registering to do business in Pennsylvania and designating an agent for service of process, a corporation consents to personal jurisdiction there. *Id.* at 173-75. Unlike the Pennsylvania registration statute, the *Display Works* court reasoned, the New Jersey statute does not expressly state that a corporation consents to jurisdiction when it registers to do business in New Jersey. *Id.* at 174-75. Therefore, Judge Arleo concluded that "*Bane* compels the Court to find that the New Jersey statutory scheme does not permit [general] jurisdiction by consent by virtue of registration to do business here or actually doing business here." *Id.* at 175.

9

Second, Judge Arleo found that the early to mid-twentieth century Supreme Court decisions relied upon by the court in *Otsuka Pharmaceutical* "developed from an outmoded way of thinking about jurisdiction" and were inconsistent with the Supreme Court's recent decision in *Daimler*. *Id.* at 176-77. Judge Arleo reasoned that

> the sweeping interpretation that a state court gave to a routine registration statute and an accompanying power of attorney that *Pennsylvania Fire* credited as a general "consent" has yielded to the doctrinal refinement reflected in *Goodyear* and *Daimler* and the Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business.

*Id.* at 178 (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 639 (2d Cir. 2016)). Therefore, Judge Arleo concluded that a corporation's registration to do business and appointment of an agent for service of process in New Jersey does not mean that the corporation consented to general personal jurisdiction in New Jersey.

The Court finds Judge Arleo's reasoning in *Display Works* persuasive. The Court agrees that *Bane* is distinguishable due to the differences in the Pennsylvania and New Jersey corporation registration statutes. Importantly, the New Jersey Statute does not contain any express language to put a corporation on notice that by registering to do business in New Jersey, it is also consenting to personal jurisdiction in the state. *See* N.J.S.A. 14A:1-1 *et seq.*; *World-Wide Volkswagen*, 444 U.S. at 291 ("Due process requires that the defendant be given adequate notice of the suit and be subject to the personal jurisdiction of the court." (internal citation omitted)). Moreover, the Court finds that consent by registration is inconsistent with the Supreme Court's decision in *Daimler*. *Daimler* reiterated the principal from *Goodyear* that there is general jurisdiction over a corporation in its place of incorporation and its principal place of business. *Daimler*, 134 S. Ct. at 760. *Daimler* also cautioned that older decisions addressing general jurisdiction over a corporation

should be afforded limited weight. *Id.* at 761 n.18 (stating that cases "decided in the era dominated by *Pennoyer's* territorial thinking should not attract heavy reliance today" (citation omitted)). In short, the Court cannot square the theory of consent to jurisdiction by mere registration and appointment of an agent for service with recent Supreme Court jurisprudence.

For these reasons, the Court concludes that Defendant Cable Service's registration to do business in New Jersey does not mean it consented to general jurisdiction in New Jersey. Accordingly, the Court does not have general jurisdiction over any of the Defendants.

Plaintiff alternately contends that there is specific jurisdiction because his claims arise out of Defendants' failure to hire him for the flagger position in Sparta, New Jersey. Pl. Opp. at 5, 9-10. As noted, in his Complaint, Plaintiff fails to allege that he applied for a flagger job in Sparta or that one was even available. Also, in his Complaint, Plaintiff fails to allege that any of the individual Defendants took any action in or directed at New Jersey. Even in his supplemental certification, Plaintiff still fails to assert that such a position was even available. According to Defendants, there was not a flagger position (or any other light duty position) available in Sparta and Defendants never hired anyone to fill these unavailable positions. In short, Plaintiff offers no "competent evidence" that a flagger position was even open in Sparta. *Dayhoff*, 86 F.3d at 1302. In the absence of such evidence, Plaintiff's causes of action do not arise out of any contact that Defendants had with New Jersey. In other words, Plaintiff cannot show specific personal jurisdiction by arguing that Defendants failed to hire him for a flagger position in New Jersey when he has presented no competent proof that the position was available or that it even existed.[8]

---

[8] In his supplemental certification, Plaintiff notes that on June 23, 2016, he took a picture of a van with cable wires at the Sparta location. Pl. Sur-Rep. ¶ C(3). Plaintiff states that "[t]he cable wire evidenced linemen jobs and wherever there are linemen jobs, there have to be at least 2 flaggers on the job." *Id.* According to Plaintiff, this picture shows that there are at least two flagger jobs in Sparta, New Jersey. However, the fact that two flaggers may have possibly been working in

11

Therefore, Plaintiff has not met his burden of proof in establishing specific personal jurisdiction over Defendants.[9]

Plaintiff finally argues that Defendants have waived their ability to contest personal jurisdiction because they made a "general appearance," as opposed to a "special appearance." Pl. Sur-Rep. at 2. Plaintiff cites to *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871 (3d Cir. 1944) to support his argument.[10] Pl. Sur-Rep. at 2. *Orange Theater*, however, stands for the exact opposite proposition than that advanced by Plaintiff. In that case, the Third Circuit explained,

> It necessarily follows that Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in. This, of course, is not to say that such keys must not be used promptly. If the defense of lack of jurisdiction of the person is not raised by motion before answer or in the answer itself it is by the express terms of paragraph (h) of Civil Procedure Rule 12 to be treated as waived, not because of the defendant's voluntary appearance but because of his failure to assert the defense within the time prescribed by the rules.

---

Sparta in 2016 -- more than four years after Plaintiff claims he asked for a flagger position -- is entirely irrelevant to this matter. The picture submitted by Plaintiff does not demonstrate that a flagger position was available in Sparta at the time Plaintiff was seeking the job.

[9] Plaintiff appears to imply that Defendants have the burden of demonstrating that there is no personal jurisdiction. Pl. Opp. at 10 ("[I]t is the Defendant that must present a compelling case that the presence of some other considerations would render jurisdictions [sic] unreasonable."). The Third Circuit, however, has made clear that the burden to show personal jurisdiction is on the Plaintiff. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) ("Once challenged, the plaintiff bears the burden of establishing personal jurisdiction.").

[10] Plaintiff cites to a second case, which he identifies as "*Long v. Newhouse*, 570 Ohio St. 348, 49 NE 577." The Court is unable to locate this case based on the citation provided.

*Id.* at 874. The abolition of the distinction between special and general appearances applies with equal force today. *See AllGood Entm't, Inc. v. Gridiron Video*, No. 09-2406, 2012 WL 395373, at *5 (D.N.J. Feb. 6, 2012). Here, Defendants appeared in this matter and filed a timely motion to dismiss for lack of personal jurisdiction. Defendants were not required to make a "special appearance" to do so. Therefore, Defendants have not waived their right to contest personal jurisdiction.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss for lack of personal jurisdiction is granted.[11] Plaintiff may file an amended complaint addressing the deficiencies identified herein within thirty days of this Opinion in accordance with Local Civil Rule 15.1.[12] An appropriate Order accompanies this Opinion.

Dated: June 28, 2017

John Michael Vazquez, U.S.D.J.

---

[11] Because the Court is dismissing this matter for lack of personal jurisdiction, it does not reach Defendants' arguments regarding dismissal for improper venue and for failure to state a claim under the LAD. However, the Court notes two points.

First, if Plaintiff elects to file an amended complaint in New Jersey, Plaintiff should carefully review the applicable Federal Rules of Civil Procedure and legal authority governing venue. Second, the Court emphasizes that Plaintiff must *plausibly* plead his causes of action. As it currently stands, the Complaint is often confusing, not in chronological order, and difficult to follow. For example, in Count Six, Plaintiff alleges a violation of the LAD, 42 U.S.C. §§ 1981, 1983, 1985, 1986, 1988, the Americans with Disabilities Act, and Title VII of the Civil Rights Act of 1964. However, in the succeeding paragraphs, Plaintiff alleges that his rights were violated under the New Jersey Civil Rights Act and New Jersey Constitution. Moreover, Plaintiff seeks a "demand for production pursuant to R. 4:18-2," which is a New Jersey Court Rule that is inapplicable in federal court. If Plaintiff files an amended complaint, he must make plausible allegations to support his claims for relief.

[12] Effective May 10, 2017, Local Civil Rule 15.1 states, in part, that

> a party who files an amended pleading in response to an Order authorizing the filing of that pleading to cure a defect in its pleading shall file:
> (1) a copy of the amended pleading, complete with a handwritten or electronic signature;
> and
> (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading that it amends, by bracketing or striking through materials to be deleted and underlining materials to be added.